# In the United States Court of Federal Claims

No. 25-850
(Filed under seal: January 9, 2026)
(Reissued for Publication on January 30, 2026)[1]

```
*****************************************
ELEIT TECHNOLOGY, INC.,              *
                                     *
               Plaintiff,            *
                                     *
v.                                   *
                                     *
THE UNITED STATES,                   *
                                     *
               Defendant,            *
                                     *
and                                  *
                                     *
LOGICORE CORPORATION,                *
                                     *
               Defendant-Intervenor. *
*****************************************
```

*Walter B. English*, Maynard Nexen PC, Huntsville, AL, counsel for Plaintiff. With whom was *Emily J. Chancey*, *Taylor R. Holt*, and *Hunter M. Drake*, Maynard Nexen PC, Huntsville, AL.

*Tanya B. Koenig*, U.S. Department of Justice, Civil Division, Washington, DC, counsel of record for Defendant, argued the motion orally, and *Daniel Bertoni*, U.S. Department of Justice, Civil Division, Washington, DC, argued the motion on the briefs. With whom was *Major Katherine Calderon*, Trial Attorney, United States Army Legal Services Agency, and *John Summers*, Attorney Advisor, AMC Legal Center – Redstone Arsenal, of counsel.

*Frank S. Murray*, Foley & Lardner LLP, Washington, DC, counsel for Defendant-Intervenor.

## OPINION AND ORDER

**DIETZ, Judge.**

Eleit Technology, Inc. ("Eleit") protests a decision by the United States Department of the Army ("Army") to award a Blanket Purchase Agreement ("BPA") order to LogiCore

---

[1] This Opinion and Order was filed under seal on January 9, 2026, *see* [ECF 44], in accordance with the Protective Order entered on May 22, 2025, *see* [ECF 11]. The parties were given an opportunity to identify protected information, including source selection information, proprietary information, and confidential information, for redaction. The parties filed a joint status report on January 26, 2026, with agreed-upon proposed redactions. [ECF 46]. The Court accepts the parties' proposed redactions. All redactions are indicated by bracket asterisks, e.g., "[* * *]." Additionally, the Court makes a non-substantive correction to a quotation in § III(C).

Corporation ("LogiCore") for services in support of technical publications life cycle management. Eleit challenges the Army's award of the BPA order on the grounds that the Army conducted an arbitrary technical evaluation that resulted in a flawed best-value determination. Eleit requests that the Court enjoin the Army from proceeding with the BPA order and instruct the Army to conduct a new technical evaluation. For the reasons set forth below, the Court finds that the Army's technical evaluation lacks a rational basis and that it resulted in an arbitrary best-value determination. Therefore, the Court **GRANTS** Eleit's motion for judgment on the administrative record, [ECF 23], and **DENIES** the government's and LogiCore's respective cross-motions for judgment on the administrative record, [ECFs 26, 27].

I.  BACKGROUND

The United States Army Aviation and Missile Command ("AMCOM") Logistics Center "provides logistics services for technical publications life cycle management . . . for AMCOM Aviation and Missile supported systems . . . to ensure that soldiers in the field have state of the art technical publications." AR 119.[2] On August 13, 2024, the Army issued a Request for Quotation ("RFQ") for support services under the AMCOM Expedited Professional and Engineering Support Services ("EXPRESS") BPA. AR 121. The RFQ indicated that the procurement was set-aside for small businesses that hold a BPA in the EXPRESS Logistics Domain and that the resulting award would be subject to "[a]ll terms and conditions of the [General Services Administration ("GSA")] Schedule and the EXPRESS BPA." *Id.* BPA orders issued under the EXPRESS program are Federal Supply Schedule procurements subject to subpart 8.4 of the Federal Acquisition Regulation ("FAR"). AR 39; FAR 8.402(a). The RFQ contemplated a hybrid firm-fixed-price and time-and-materials contract for a single BPA order with a three-month base period, a nine-month option period, four one-year option periods, and an optional six-month extension period. AR 181. The RFQ was amended twice, AR 158-97, and had a final quotation submission deadline of September 17, 2024, AR 181.

The RFQ specified that the government would award the BPA order "to the quoter that submits a responsive quotation that provides the best value to the government using a tradeoff process." AR 185. It stated that "best value" means: "the expected outcome of the acquisition that, in the government's estimation, provides the greatest overall benefit in response to the requirement." *Id.* It further stated that "tradeoff" means: "the government may accept other than the lowest priced quotation, when the decision is consistent with the evaluation criteria and the government reasonably determines that the perceived benefits of a higher priced quotation warrant the increase in price." AR 186. The RFQ included two evaluation factors: technical and price. *Id.* It explained that "technical is more important than price," and that, while "price is not expected to be the controlling criterion in the selection, [] price importance will increase as the differences between the evaluation results for the technical criterion decrease." *Id.*

Under the technical factor, the RFQ required that "quoters [] submit responses to critical paragraph numbers 3.1, 3.2, 3.5, and 3.6" of the Performance Work Statement ("PWS"). AR 185 (emphasis omitted); *see generally* AR 129-30 (listing critical PWS paragraphs 3.1, 3.2, 3.5 and 3.6). The RFQ explained:

---

[2] The Court cites to the administrative record filed by the government at [ECF 24] as "AR ___." When quoting from the administrative record, the Court omits unnecessary capitalization.

> Quoters shall provide responses to the requested PWS paragraphs that demonstrate a clear level of expertise and understanding of the requirements and reflect their ability to successfully perform the tasks described. Narratives should describe their plans for executing the requirements through the length of the BPA order and detail their company's processes, procedures, innovative methods, and problem-solving abilities. Quoters may provide recent (within the last 5 years) and relevant examples of experience in terms of size, scope and complexity, if those experiences demonstrate its understanding of the requirement and its ability to perform the requirement. However, a quotation may also establish its expertise in other ways such as, but not limited to, combinations of stated capabilities and explanations of how seemingly unrelated experiences have provided sufficient preparation to perform the PWS requirements.

*Id.* The RFQ also stated that the government would evaluate the quotations under the technical factor for "demonstration of [a] clear understanding of the requirements and ability to successfully perform the tasks described, to include[,] but not limited to[,] plans for executing the requirements through the length of the order and detail[s on] their company's processes, procedures, innovative methods, and problem-solving abilities." AR 186. It explained that, "if the quotation sufficiently addresses the critical paragraph[] numbers 3.1, 3.2, 3.5, and 3.6 and demonstrates a clear understanding and ability to perform the requirement, then the government will accept without further explanation that the contractor can perform all PWS requirements." *Id.* (emphasis omitted). It cautioned that while "the quoter may discuss non-critical requirements[,] [] if the quoter provides statements which cause the government to question the quoter's ability to perform those non-critical requirements, such statements will be evaluated accordingly." *Id.*

The RFQ provided that the technical factor would be rated using the following standards:

| Technical Ratings | Description |
|---|---|
| Outstanding | Quotation indicates an exceptional approach and understanding of the requirements and contains multiple strengths. Risk of unsuccessful performance is very low. |
| Good | Quotation meets requirements and indicates a thorough level of expertise and an understanding of the requirements. Strengths outweigh any weaknesses. Risk of unsuccessful performance is low. |
| Acceptable | Quotation meets requirements and indicates an adequate level of expertise and an understanding of the requirements. Strengths and Weaknesses are offsetting or will have little or no impact on order performance. Risk of unsuccessful performance is moderate. |
| Marginal | Quotation does not demonstrate an adequate approach and understanding of the requirements. Risk of unsuccessful performance is high. |
| Unacceptable | Quotation does not meet requirements and contains one or more deficiencies. Risk of unsuccessful performance is high. If this criterion is rated as Unacceptable, **additional factors will not be evaluated and the Quotation is not eligible for award.** |

AR 186-87. It defined a "strength" as "a particular aspect of the quoter's submission that has merit or exceeds specified performance capability requirements in a way that will be advantageous to the government during BPA order performance," a "weakness" as "any flaw in the quotation that increases the risk of unsuccessful BPA order performance," and a "deficiency" as "any material failure of a quotation to meet a government requirement or a combination of weaknesses in a quotation that increases the risk of unsuccessful BPA order performance to an unacceptable level." AR 187.

Under the price factor, the RFQ required quoters to follow the instructions on a government-provided pricing template and complete all required fields. AR 185. It provided that the government would evaluate price for "compliance" and "price reasonableness." AR 187. For compliance, the RFQ explained that "quotations will be evaluated for compliance based upon the submission requirements contained in the RFQ including all pricing attachments" and that "failure to comply with any pricing instruction included in this RFQ . . . may render the quotation ineligible for award." *Id.* For price reasonableness, the RFQ stated that "in accordance with FAR 31.201-3, a price is reasonable if, in its nature and amount, it does not exceed that which would be incurred by a prudent person in the conduct of competitive business," and that "any rates quoted above the GSA schedule rate will be determined unreasonable, and the entire quotation will be ineligible for award." *Id.*

On September 17, 2024, the Army received quotations from five quoters, including Eleit and LogiCore. AR 550. The Army's technical evaluation team was comprised of three-members tasked to perform a technical evaluation on each quotation. *Id.* The technical evaluation team completed a technical evaluation worksheet for each quotation, AR 490-508, and assigned each quotation a technical rating of "Acceptable," AR 492, 495, 500, 503, 507 (emphasis omitted). While the technical ratings were the same for each quotation, one quotation was assigned a weakness for critical paragraph 3.5, AR 491, and two quotations were assigned two weaknesses for critical paragraph 3.5, AR 498-99, 506-07. The quotations submitted by Eleit and LogiCore were not assigned any strengths, weaknesses, or deficiencies. AR 494-95, 502-03. The evaluation worksheets for both Eleit and LogiCore contained the following rationale for the overall technical rating:

> The [] quotation meets requirements and indicates an acceptable level of expertise and an understanding of the PWS requirements and deliverables. However, despite looking through the entire quote, the evaluation team could not find a particular aspect of the submission that either has merit or exceeds specified performance capability requirements in a way that will be advantageous to the government during BPA order performance. Additionally, after reviewing the entire proposal, the evaluation team did not find a flaw in the quote that increases the risk of unsuccessful BPA order performance.
>
> The evaluation team reviewed and evaluated all the [quoter's] presented PWS paragraphs. There were zero strengths, zero weaknesses, and zero deficiencies.

4

> All PWS sections were reviewed and were determined, at a minimum, to have been adequately covered in the [] quotation. Overall, although the quotation contains no strengths or weaknesses, the [] quotation meets requirements and indicates an acceptable level of expertise and an understanding of the requirements with a moderate risk of unsuccessful performance to the government. Therefore, the government assesses a rating of "ACCEPTABLE."

AR 495, 503 (emphasis omitted). For the price factor, the contracting officer determined that "all [quoters] demonstrated reasonable responsiveness to quotation instructions," AR 559; that "all [] quoted prices . . . were less than the [Independent Government Cost Estimate]," AR 564; and that there was "reasonable pricing from all [quoters]," AR 565. The contracting officer noted that "LogiCore[] was priced lower than the other four [quoters]." AR 565.

Using the technical and price evaluations, the contracting officer, serving as the Source Selection Authority ("SSA"), conducted a best-value tradeoff analysis and summarized the "overall ratings and pricing" as follows:

| Offeror | [* * *] | ELEIT | LogiCore | [* * *] | [* * *] |
|---|---|---|---|---|---|
| Technical Expertise | Acceptable | Acceptable | Acceptable | Acceptable | Acceptable |
| Price | [* * *] | [* * *] | [* * *] $10,904,912.67 | [* * *] | [* * *] |

AR 568-69. The SSA stated that she "conducted an independent comparative assessment of the [] quotations . . . [as] set forth in the RFQ"; "adopt[ed] the findings and ratings (for the non-price factors) contained in the technical and price evaluations"; and "conducted a price-technical factor trade-off comparison of proposals, a price reasonableness determination, as set forth in the RFQ, in reaching [a] best value decision." AR 569 (capitalization omitted). The SSA summarized the technical evaluation findings for each quoter. AR 569-571. With respect to Eleit and LogiCore, the SSA provided an identical summary:

> [The quoter] was assessed a rating ACCEPTABLE in the technical expertise factor. While demonstrating an acceptable level of understanding and performance of the PWS requirements and deliverables, [the quoter] was assessed zero (0) strengths and zero (0) weakness or deficiencies. [The quoter] adequately addressed all four (4) of the critical PWS paragraph requirements, stating it can meet all requirements and provided adequate examples of relevant experience associated with each PWS paragraph. Overall, the [] quotation meets requirements and indicates an adequate level of expertise and an understanding of the requirements. The "Acceptable" rating is indicative of a moderate risk of unsuccessful performance to the government.

AR 570 (emphasis omitted). After summarizing the technical evaluation results, the SSA stated that the "assessment of [a] weakness is a discriminating factor" against three quoters. AR 572.

5

The SSA explained, "in performing a technical trade-off and further analyzing the best value amongst the five [quoters] based on technical expertise, strengths and weaknesses of each [quoter] were considered." AR 573. With respect to Eleit and LogiCore, the SSA stated that they both "demonstrated an acceptable level of technical expertise to successfully perform this requirement," and that "neither [quoter] demonstrated any notable strengths or weaknesses." *Id.* With respect to the other quoters, the SSA stated that, while they "demonstrated an adequate level of technical expertise," they each received weaknesses "in critical PWS paragraph 3.5." *Id.* Nevertheless, the SSA determined that "overall, all [quoters] exhibited an acceptable technical methodology with moderate risk of unsuccessful performance." *Id.*

The SSA further explained that while "the price factor is the least important and is not expected to be the controlling criterion in this selection, [] its importance will increase as the differences between the evaluation results for the other criteria decrease." AR 573-74. In this regard, the SSA determined that "when considering the price factor in conjunction with the technical factor . . . there are no advantages provided by ELEIT over LogiCore in the technical factor or price factor that would warrant paying $[* * *] for its services." AR 574. Consequently, the SSA concluded that "LogiCore's quotation . . . provide[s] the best value to the government." AR 575. LogiCore was awarded the BPA order on May 8, 2025. AR 583.

On May 19, 2025, Eleit filed a protest challenging the Army's evaluation and award decision. Compl. [ECF 1]. The Army issued a stop work order to LogiCore the following day. AR 660-61. On June 6, 2025, LogiCore filed an unopposed motion to intervene, Mot. to Intervene [ECF 17], which the Court granted, [ECF 18]. On July 2, 2025, Eleit filed an amended complaint, Am. Compl. [ECF 20], and a motion for judgment on the administrative record on the counts raised in its amended complaint, Pl.'s Mot. J. Admin. R. [ECF 23]. The government and LogiCore respectively filed cross-motions for judgment on the administrative record and responses to Eleit's motion on July 18, 2025. Def.'s Cross-mot. [ECF 26]; Def.-Intervenor's Cross-mot. [ECF 27]. The motions are fully briefed, Pl.'s Reply & Resp. [ECF 30]; Def.'s Reply [ECF 32]; Def.-Intervenor's Reply [ECF 33], and the Court heard oral argument on December 12, 2025, *see* Order [ECF 43].

## II.     LEGAL STANDARDS

Under the Tucker Act, this Court has jurisdiction "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). This waiver of sovereign immunity "covers a broad range of potential disputes arising during the course of the procurement process," including objections to an award decision by a federal agency. *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380-81 (Fed. Cir. 2012) (citations omitted). "When proceedings before an agency are relevant to a decision in a case, the administrative record of those proceedings must be . . . filed with the court." RCFC 52.1(a). Parties may then "file a motion for judgment on the administrative record for the Court to assess whether [the agency], given all disputed and undisputed facts in the record, acted in compliance with the legal standards governing the decision under review." *Agile Def., Inc. v. United States*, 143 Fed. Cl. 10, 17 (2019) (citations omitted); *see also Palantir USG,*

*Inc. v. United States*, 904 F.3d 980, 989 (Fed. Cir. 2018) ("In deciding [cross-motions under RCFC 52.1(c)], the court considers 'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" (quoting *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006))). This procedure is "designed to provide for trial on a paper record, allowing fact-finding by the [] court." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).

When a party challenges an agency's contract award decision, the Court reviews the decision using the standard of review set forth in the Administrative Procedure Act ("APA"), 28 U.S.C. § 1491(b)(4), which states that "the reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706. "In applying the APA to protests . . . [the court] determine[s] whether '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009) (quoting *PGBA, LLC v. United States*, 389 F.3d 1219, 1225 (Fed. Cir. 2004)); *see also Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (stating that the court will not uphold an agency decision where the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation . . . counter to the evidence before [it], or is so implausible [] it could not be ascribed to a difference in view or the product of agency expertise"). The standard of review is "highly deferential," *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000), and the Court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," *Motor Vehicle Mfrs. Ass'n of U.S.*, 463 U.S. at 43 (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). Nevertheless, the considerable deference afforded to an agency under the APA "is not a rubber stamp." *Overstreet Elec. Co. v. United States*, 47 Fed. Cl. 728, 742 (2000) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 290 (1st Cir. 1995)); *see also FirstLine Transp. Sec., Inc. v. United States*, 100 Fed. Cl. 359, 376 (2011) ("Whenever a procurement decision is without a rational basis or is based upon a clear violation of law, that decision must be set aside.").

"[T]o prevail in a protest[,] the protester must show not only a significant error in the procurement process, but also that the error prejudiced it." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996) (citations omitted); *see also Bannum, Inc.*, 404 F.3d at 1351 (stating that "[a] bid protest proceeds in two steps," with the court first "determin[ing] whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract," and then "determin[ing], as a factual matter, if the bid protester was prejudiced by that conduct"). "[T]o establish prejudice, a protester must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract." *Data Gen. Corp.*, 78 F.3d at 1562; *see also Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999) ("[T]o establish [] prejudice, [a] protester must demonstrate that but for the alleged error, 'there was a substantial chance that [the protester] would receive an award—that it was within the zone of active consideration'" (quoting *CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1574-75 (Fed. Cir. 1983))).

**III.    ANALYSIS**

Eleit argues that the Army failed to adequately evaluate the quotations and document its findings as required by the RFQ, that the Army improperly credited LogiCore for experience that was more than five years old, and that the Army's errors prejudiced it by tainting the best-value award decision. Eleit requests that the Court enjoin the Army from proceeding with performance of the BPA order and require the Army to conduct a proper technical evaluation. As explained below, the Court finds that the Army's technical evaluation and evaluation of LogiCore's experience were arbitrary and that Eleit was prejudiced by the Army's errors. The Court also finds that Eleit is entitled to injunctive relief.

### A.    The Army's technical evaluation lacks a rational basis.

Eleit argues that the Army "failed to document the [technical] evaluation in a way that allows the Court to determine the evaluation was reasonable and consistent with the RFQ's best value methodology." [ECF 23] at 21.[3] Eleit contends that "[k]nowing the RFQ required a best value tradeoff, the Army had to evaluate proposals in a way that 'differentiated' them, 'to distinguish their relative quality under each stated evaluation factor,'" *id.* at 20 (quoting *Sys. Rsch. & Applications Corp.,* B-299818 *et al.*, 2008 CPD ¶ 28, at *19 (Comp. Gen. Sept. 6, 2007)), and that, instead, "[t]he Army made absolutely no findings for Eleit or LogiCore and deemed them both Acceptable with the same formulaic statement," *id.* at 19. With respect to critical PWS paragraphs 3.1, 3.2, and 3.6, Eleit points out that "[t]here is not a single finding for any of the five bidders . . . anywhere in the record" and that "[h]ad the Army evaluated proposals reasonably, it would have found features that positively distinguished Eleit from other bidders." *Id.* at 19-20. Eleit also argues that it "would and should have received at least one strength" given that its incumbent status indicates recent "expertise-proving experience" where it "reduced backlog to the lowest point in a decade." *Id.* at 20. According to Eleit, "the Army's evaluation here offered little, to no, rationale for the ratings given, or why no strengths, weaknesses, or deficiencies were awarded," and is, thus, sufficient grounds for the Court to reject the Army's award decision. *Id.* at 21 (internal quotation marks and citations omitted). The government counters that "Eleit wants the Army to prove a negative by seeking more documentation of the Army's decision not to assign its quotation any strengths or weaknesses." [ECF 26] at 15. In the government's view, under FAR subpart 8.4, "[t]he agency need not document every decision it makes in rigorous detail[] but [need] only provide evidence of compliance . . . and the basis for the award decision." *Id.* at 20 (internal quotation marks and citations omitted). The government asserts that the RFQ "was clear that the importance of a quoter's price would increase in importance . . . as the difference between the evaluation results for the [t]echnical criterion decrease." *Id.* at 15 (internal quotation marks omitted). The government, therefore, contends that "the Army conducted its analysis, recorded its findings, and made its decision in accordance with the FAR," and "need have done no more." *Id.* at 22. The Court finds that the Army's technical evaluation lacks a rational basis.

In reviewing an agency decision, "the court must determine if the agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action.'" *Distributed Sols., Inc. v. United States*, 104 Fed. Cl. 368, 382 (2012) (alterations in original) (quoting *Motor Vehicle Mfrs.*

---

[3] All page numbers in the parties' briefs refer to the page numbers generated by the CM/ECF system.

*Ass'n*, 463 U.S. at 43). "For agency action to be upheld, it must not only be explainable; it must also be explained." *Palantir USG, Inc.*, 904 F.3d at 994 (quoting *Sierra Club v. Gorsuch*, 715 F.2d 653, 660-61 (D.C. Cir. 1983)); *see also Golden IT, LLC v. United States*, 177 Fed. Cl. 118, 136 (2025) (recognizing that even if "the administrative record doesn't tend to show that the agency made an error," the agency may be in violation of the APA where "[its] findings or decisions are conclusory or unexplained in the administrative record" because "the APA requires the government to show its work" (citing *Consol. Safety Servs., Inc. v. United States*, 167 Fed. Cl. 543, 564 n.11 (2023); *CAN Softtech, Inc. v. United States*, 2024 WL 4434253, at *6 (Fed. Cl. Oct. 4, 2024))). "Further, it is well settled that an agency must explain its action with sufficient clarity to permit 'effective judicial review.'" *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005) (quoting *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973)). Where the Court determines that an agency decision "entirely fail[s] to consider an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n of U.S.*, 463 U.S. at 43, or that the agency decision "fail[s] to offer [a] rational connection between facts and judgment," *id.* at 56, the agency's decision may not "pass muster under the arbitrary and capricious standard" of the APA, *id.*

In this case, the RFQ instructed the quoters to "submit responses to critical [PWS] paragraphs [] 3.1, 3.2, 3.5, and 3.6." AR 185 (emphasis omitted). It stated that the Army would assess whether each quotation "demonstrat[es a] clear understanding of the requirements and ability to successfully perform the tasks described, to include but not limited to plans for executing the requirements through the length of the order and detail[s on] their company's processes, procedures, innovative methods, and problem-solving abilities." AR 186. In assessing the quotations for Eleit and LogiCore, the technical evaluation team stated that it "reviewed and evaluated all the [quoter's] presented PWS paragraphs" and that the quotations "meet[] requirements and indicate[] an acceptable level of expertise and an understanding of the PWS requirements and deliverables." AR 495 (Eleit's evaluation worksheet), AR 503 (LogiCore's evaluation worksheet). The technical evaluation team also stated that they "could not find a particular aspect of the submission that either has merit or exceeds specified performance capability requirements in a way that will be advantageous to the government during BPA order performance." AR 495, 503. These statements merely restate the evaluation criteria and rating descriptions contained in the RFQ. *See* AR 187 (defining an "acceptable" technical rating as "quotation meets requirements and indicates an adequate level of expertise and an understanding of the requirements" and a "strength" as "a particular aspect of the quoter's submission that has merit or exceeds specified performance capability requirements in a way that will be advantageous to the government"). They do not provide a rational connection between each quotation, the critical PWS paragraphs, and the assignment of a technical rating sufficient to satisfy the APA standard of review. *See Motor Vehicle Mfrs. Ass'n of U.S.*, 463 U.S. at 56 (requiring an agency "to offer [a] rational connection between facts and judgment"); *Palantir USG, Inc.*, 904 F.3d at 994 ("If there is reasoned decision[-]making lurking behind such agency behavior, it is yet to be articulated." (quoting *Sierra Club*, 715 F.2d at 660-61)); *DigiFlight, Inc. v. United States* (*DigiFlight I*), 165 Fed. Cl. 588, 609 (2023) (finding that "the Army insufficiently documented its technical expertise evaluation for purposes of the APA standard of review" in a FAR subpart 8.4 procurement).

Furthermore, the evaluation worksheets indicate that the technical evaluation team may have improperly focused on technical acceptability rather than technical superiority, which

9

deviates from the selection procedures set forth in the RFQ. In each of the five evaluation worksheets, the technical evaluation team states that "all PWS sections were reviewed [. . .] and were determined, *at a minimum*, to have been adequately covered in the [] quotation." AR 492, 495, 500, 503, 507 (emphasis added). While this assessment may be accurate, it is also irrelevant because this was a best-value procurement, not a lowest-price technically acceptable procurement. *See DigiFlight I*, 165 Fed. Cl. at 608 (finding that the technical evaluation in a FAR subpart 8.4 procurement did not indicate that the quotations were evaluated in accordance with the best-value framework set forth in the RFQ); *see also FirstLine Transp. Sec., Inc.*, 100 Fed. Cl. at 377 ("In a best-value procurement, the relevant question is not whether the lowest-priced proposal will meet the minimum technical requirements set forth in the RFP; rather, the government must determine which proposal represents the best value to the government."). The RFQ required that the Army assess the quotations to determine which one provides the Army with "the *greatest overall benefit* in response to the requirement," AR 185 (emphasis added), and to award the BPA order using a tradeoff process with the technical features of a quotation being more important than price, AR 186. Thus, the technical evaluation teams' apparent focus on the technical acceptability of each quotation is inconsistent with the RFQ. *See* FAR 8.405-3(c)(2)(iii)(A)(3) (requiring that the ordering agency "[f]airly consider all responses received and make award in accordance with the selection procedures").

To be sure, the Army is not required to "elaborate on every aspect of [a quoter's] proposal." *DigiFlight, Inc. v. United States* (*DigiFlight II*), 167 Fed. Cl. 158, 166 (2023). Nor is the Army required to assign strengths and weaknesses—the Army may, in its discretion, determine that a quotation does not merit a strength or warrant a weakness and that the quoter's solution is "merely adequate." *DigiFlight II*, 167 Fed. Cl. at 167 (quoting *Inspace 21 LLC v. United States*, 128 Fed. Cl. 69, 89 (2016)). However, such deference "does not mean that agencies 'can provide almost no rationale for the decisions made on the technical evaluation.'" *Id.* at 166 n.4 (quoting *DigiFlight I*, 165 Fed. Cl. at 607). The record must allow the Court to effectively review the objective and subjective determinations contained in the agency's technical evaluation and to discern the rationale applied in assigning the technical ratings. *See Inspace 21 LLC*, 128 Fed. Cl. at 88-89. Here, there is no indication in the record as to what aspects of Eleit's and LogiCore's quotations the Army relied upon to determine that the quotations were acceptable. Consequently, the Court's acceptance of the Army's conclusions, with no indication of the basis of the technical rating decision, would amount to the Court applying a rubber stamp. *See Overstreet Elec. Co.*, 47 Fed. Cl. at 742 (quoting *Citizens Awareness Network, Inc.*, 59 F.3d at 290).[4]

---

[4] LogiCore states that "[t]he documentation produced by the Army includes detailed descriptions of weaknesses assigned to multiple quotations under the [t]echnical [f]actor, indicating the evaluators carefully reviewed and assessed the content of the quotations." [ECF 27] at 9. However, the Army's assignment of weaknesses to three of the quotations does not negate the conclusory nature of the Army's technical evaluation. Like the evaluation worksheets for Eleit and LogiCore, the evaluation worksheets for the other quoters merely restate the evaluation criteria and rating descriptions contained in the RFQ. *Compare* AR 491-92, 500, 507 (evaluation worksheets for the other quoters stating that the quotations "meet[] requirements and indicate[] an adequate level of expertise and an understanding of the PWS requirements and deliverables") *with* AR 187 (RFQ defining an "acceptable" technical rating as "[q]uotation meets requirements and indicates an adequate level of expertise and an understanding of the requirements"). Additionally, the evaluation worksheets assign weaknesses only for critical PWS paragraph 3.5. *See* AR 491, 498-99, 506-07. They do not contain any explanation for the Army's findings with respect to the remaining critical paragraphs.

The Court is not persuaded by the government's contention that, by requiring the Army to provide additional explanation, the Court would be "forc[ing] the Army to go beyond the requirements of FAR subpart 8.4." [ECF 26] at 22. FAR subpart 8.4 procurements have routinely been found to provide a "simplified" procurement approach with more streamlined procedures and minimal documentation standards. *See DigiFlight II*, 167 Fed. Cl. at 166-67; *Reli Grp., Inc. v. United States*, 174 Fed. Cl. 630, 641 (2025) (stating that "FAR Subpart 8.4 imposes minimum documentation requirements" and "does not require an agency to 'document every decision it makes in rigorous detail'" (quoting *Trillion ERP Venture Tech LLC v. United States*, 161 Fed. Cl. 531, 554 (2022))); *Telos Corp. v. United States*, 129 Fed. Cl. 573, 577 (2016) (recognizing that "[f]ar less [documented analysis] is required in [Federal Supply Schedule] purchases" under FAR subpart 8.4). However, the use of this type of procurement does not absolve the Army of its obligation under the APA to "articulate a satisfactory explanation for [its] action to permit effective judicial review." *PricewaterhouseCoopers Pub. Sector, LLP v. United States*, 126 Fed. Cl. 328, 357 (2016) (quoting *Lab'y Corp. of Am. Holdings v. United States,* 116 Fed. Cl. 643, 653 (2014)); *Golden IT, LLC*, 177 Fed. Cl. at 136-37 ("[A] procuring agency must document and explain its basis for awarding a contract to a particular [quoter] with sufficient clarity even in FAR 8.4 procurements. . . . [Where] evaluations [are] too truncated to demonstrate rationality under the relevant APA standard[,] [they] cannot pass muster no matter what amount of streamlined documentation FAR 8.4 permits." (fourth, fifth, and sixth alterations in original) (quoting *Tesla Lab'ys, Inc. v. United States*, 172 Fed. Cl. 505, 536-37 (2024))).

### B.     The Army's evaluation of LogiCore's experience lacks a rational basis.

Eleit argues that "the Army unreasonably evaluated LogiCore's [t]echnical proposal by giving it a pass for relying on old experience that did not meet the RFQ's requirements." [ECF 23] at 22 (emphasis omitted). Eleit contends that the RFQ "was absolutely clear—bidders relying on experience [to demonstrate expertise] could only use work done in the past five years." *Id.* Therefore, Eleit asserts that "the Army could not consider experience older than five years when evaluating proposals." *Id.* According to Eleit, "[f]or critical PWS paragraphs 3.2, 3.5 and 3.6, the record does not explain how the Army concluded LogiCore met requirements despite expressly relying on experience outside the RFQ's allowable timeframe." *Id.* at 27-28. In response, the government asserts that Eleit "misreads the solicitation to mandate that the Army disregard any experience older than five years," and that "nowhere did the Army *require* quoters to submit examples of their recent experience." [ECF 26] at 27. The government also contends that "the RFQ permitted not only examples of experience that were 'recent (within the last 5 years)' but also those that were relevant 'in terms of size, scope, and complexity,' so long as any offered examples 'demonstrate [a quoter's] understanding of the requirement and its ability to perform the requirement.'" *Id.* (alteration in original) (quoting AR 185). The Court finds that, while the RFQ does not require quoters to use experience to demonstrate their expertise and understanding of the requirements, it does require that any experience used to do so be performed within the five-year period prior to issuance of the RFQ. Because the record lacks an explanation of the Army's consideration of LogiCore's quotation, the Court cannot determine whether the Army adhered to the five-year recency requirement.

FAR subpart 8.4 requires agencies to conduct technical evaluations in accordance with the procedures outlined in the solicitation. FAR 8.405-3(c)(2)(iii)(A)(3); *see also Criterion Sys.,*

11

*Inc. v. United States*, 144 Fed. Cl. 409, 414 (2019) ("FAR Part 8 procurements are bound by the selection procedures set forth in their RFQs."). The Court "appl[ies] the same principles concerning the interpretation of [g]overnment contracts to the interpretation of [g]overnment solicitations." *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1344 (Fed. Cir. 2021) (citing *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1353 & n.4 (Fed. Cir. 2004)); *see also Ginn Grp., Inc. v. United States*, 159 Fed. Cl. 593, 603 (2022) ("Well-established principles of contract interpretation apply to the interpretation of government solicitations" (citing *Linc Gov't Servs., LLC v. United States*, 96 Fed. Cl. 672, 708 (2010), *abrogated on other grounds by Safeguard Base Operations, LLC*, 989 F.3d 1326)). Thus, the Court begins its interpretation of a solicitation with the solicitation's language. *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004). Additionally, the Court "must consider the [s]olicitation as a whole and interpret 'it in a manner that harmonizes and gives reasonable meaning to all of its provisions.'" *Safeguard Base Operations, LLC*, 989 F.3d at 1344 (quoting *Banknote Corp. of Am.*, 365 F.3d at 1353). "An interpretation that gives meaning to all parts of the [solicitation] is to be preferred over one that leaves a portion of the [solicitation] useless, inexplicable, void, or superfluous." *Id.* (alterations in original) (quoting *NVT Techs., Inc.*, 370 F.3d at 1159).

Under the instructions for the technical factor, the RFQ required that quoters "provide responses to the [critical] PWS paragraphs that demonstrate a clear level of expertise and understanding of the requirements and reflect their ability to successfully perform the tasks described." AR 185. To do so, the RFQ stated that quoters "may provide recent (within the last 5 years) and relevant examples of experience in terms of size, scope and complexity, if those experiences demonstrate its understanding of the requirement and its ability to perform the requirement." *Id.* It also allowed quoters to "establish [] expertise in other ways such as, but not limited to, combinations of stated capabilities and explanations of how seemingly unrelated experiences have provided sufficient preparation to perform the PWS requirements." *Id.* Thus, under the plain language of the RFQ, quoters were not *required* to proffer experience in support of their quotations. However, to the extent that a quoter chose to use experience, the RFQ required that such experience be both recent—within the last five years—*and* relevant. *See* 11 Richard A. Lord, Williston on Contracts § 30:12 (4th ed. 2025 Update) (stating that "the words 'and' and 'or' should not be considered interchangeable in construing a contract, absent strong supporting reasons" and that "the word 'and' is conjunctive in nature and ordinarily means in addition to" (citations omitted)).

The subsequent RFQ language that broadly permitted quoters to establish expertise "in other ways" did not eliminate the recency requirement. AR 185. It merely suggested that, as an additional option to demonstrate expertise, a quoter could use stated capabilities in combination with experiences that *appear* to be unrelated to the PWS requirements. *See id.* (stating that quoters may use "combinations of stated capabilities and explanations of how *seemingly* unrelated experiences have provided sufficient preparation to perform the PWS requirements" (emphasis added)). In other words, it allowed quoters to demonstrate the relevance of their experience through a combination of their capabilities and unrelated experience. As such, this statement pertains to the relevance requirement and does not affect the recency requirement. If the Court were to interpret this language as allowing quoters to use experiences that fall outside of the five-year timeframe, it would render the recency requirement superfluous. Therefore, the

12

Court adopts the only reasonable interpretation of the solicitation—that it required that any experience submitted by quoters to satisfy the evaluation criteria be within the five-year timeframe. *See Safeguard Base Operations, LLC*, 989 F.3d at 1344 (adopting "the only interpretation [of the solicitation] that harmonizes and gives reasonable meaning to all of the [s]olicitation's provisions, without rendering any part superfluous or void").[5]

The Court next considers whether the Army adhered to the five-year recency requirement in its technical evaluation of LogiCore's quotation. The RFQ was issued on August 13, 2024. AR 179. In response to the critical PWS paragraphs, LogiCore's proposal provides experiences that range from January 4, 2012, through February 26, 2025. AR 364-65, 370-71. Consequently, as the government concedes, a portion of the experience provided by LogiCore does not fall within the five-year window. *See* [ECF 26] at 31. Nevertheless, because the Army's technical evaluation of LogiCore's quotation does not contain any explanation of how the technical evaluation team considered LogiCore's experience, the Court is unable to effectively review whether the Army adhered to the recency requirement in conducting its technical evaluation and how LogiCore's experience factored into its assigned technical rating. *See Timken U.S. Corp.*, 421 F.3d at 1355 (stating that "it is well settled that an agency must explain its action with sufficient clarity to permit 'effective judicial review'" (quoting *Camp,* 411 U.S. at 142-43)). The government posits that "[e]ven if LogiCore had been required . . . to submit an example of a contract within the last five years, LogiCore provided two examples for its response to PWS paragraph 3.2," [ECF 26] at 29; "listed a contract with[in] the past five years" to satisfy PWS paragraph 3.5, *id.* at 31; and "described its relevant experience and expertise" for PWS paragraph 3.6, *id.*[6] However, the Court will not accept the government's attempt to use post hoc rationalizations to explain how LogiCore's quotation satisfies the RFQ requirements. *See IAP Worldwide Servs., Inc. v. United States*, 159 Fed. Cl. 265, 286 (2022) (stating that while the court will sustain a decision that lacks ideal clarity, it "will not put words in an agency's mouth or invent supporting rationales the agency has not itself articulated in the administrative record").

### C. The Army's errors prejudiced Eleit.

Eleit argues that "the [Army's] best value decision was unreasonable because it relied on a flawed, inadequately documented evaluation," [ECF 23] at 14, and "made a [p]rice-only decision, not one rooted in the best value methodology the RFQ promised," *id.* at 28. Specifically, Eleit states that "[h]ad the Army conducted a reasonable evaluation, it likely would have identified distinguishing characteristics in the various proposals that would have benefitted Eleit, especially the strength Eleit should have received for its work reducing backlog to the lowest point in 10 years." *Id.* at 30. Eleit also states that "[a]t a minimum, [a reasonable evaluation] should have resulted in at least one weakness for LogiCore" due to LogiCore's "reli[ance] on experience that was not recent." *Id.* at 30-31. Furthermore, Eleit contends that it "was in the zone of active consideration as the only bidder other than LogiCore the contracting

---

[5] This interpretation is supported by a note to the technical evaluation team on the evaluation worksheets, which states: "<u>IF</u> experience examples are submitted to demonstrate the ability, they must have been performed within the past five (5) years and [be] relevant examples of experience in terms of size, scope, and complexity." AR 490, 494, 497, 502, 505.

[6] Eleit does not dispute that LogiCore submitted recent experience for critical paragraph 3.1. [ECF 23] at 23.

13

officer considered for award." *Id.* at 30. As a result, Eleit contends that "prejudice is obvious" because "[h]ad the Army evaluated all proposals reasonably and consistent with the RFQ, or had the [SSA] done so when she made the award decision, Eleit's chances for award would have improved and given it a substantial likelihood of award." *Id.* at 31. In response, the government states that "[p]rejudice cannot be presumed, . . . and Eleit never explains how its quotation was so technically superior as to overcome its nearly $[* * *] higher price." [ECF 26] at 26 (internal citation omitted). The Court finds that Eleit was prejudiced by the Army's errors.

To prevail in a bid protest, the protester "bears the burden of proving that a significant error marred the procurement in question," *FirstLine Transp. Sec., Inc.*, 100 Fed. Cl at 370 (citing *Grumman Data Sys. Corp.*, 88 F.3d 990, 1000 (Fed. Cir. 1996)), and "again bears the burden of proof" to show prejudice, *id.* at 371 (citing *Bannum, Inc.*, 404 F.3d at 1358). "[T]o establish [] prejudice, [a] protester must demonstrate that but for the alleged error, 'there was a substantial chance that [the protester] would receive an award—that it was within the zone of active consideration.'" *Alfa Laval Separation, Inc.*, 175 F.3d at 1367 (quoting *CACI, Inc.-Fed.*, 719 F.2d at 1574-75); *see also Eskridge & Assocs. v. United States*, 955 F.3d 1339, 1345 (Fed. Cir. 2020). While "there is no presumption of prejudice [even] when a protest[e]r demonstrates irrationality in an agency decision[,] . . . . at least in some contexts, prejudice will be easily shown because the circumstances will make prejudice readily apparent." *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 998 (Fed. Cir. 2021) (citing *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009)).

Under the RFQ, the SSA was obligated to conduct a best value tradeoff analysis between the technical and price factors with "technical [being] more important than price." AR 185-86; *see also* FAR 8.405-3(c)(2)(iii)(A)(3) (when ordering off of a multiple-award BPA, the ordering activity must "[f]airly consider all responses received and make award in accordance with the selection procedures"). In her best value tradeoff analysis, the SSA eliminated three quoters from consideration on the basis that "the assessment of a weakness is a discriminating factor." AR 572. The SSA then noted that "LogiCore and [Eleit] were equally rated and neither [quoter] presented any notable strengths or weaknesses to differentiate each other in the technical expertise factor." AR 574. As a result, the SSA stated that "the significant difference between LogiCore and [Eleit] is price," *id.*, and that, accordingly, LogiCore's lower-priced quotation "will provide the best value to the government," AR 575. However, in making this best-value determination, the SSA adopted the findings and ratings contained in the technical evaluations, AR 569, which, for the reasons explained above, lack a rational basis. By doing so, the SSA made an arbitrary best-value determination. *See Tesla Lab'ys, Inc.,* 172 Fed. Cl. at 536 ("An agency can only make a rational best value determination if the findings that underlie the best value determination are themselves rational."); *Femme Comp Inc. v. United States*, 83 Fed. Cl. 704, 767 (2008) (finding a best-value tradeoff determination to be arbitrary, capricious, and not in accordance with law because the "tradeoffs were based upon the Army's irrational evaluations of the Technical/Management and Small Business Participation factors" and because "the [SSA] did not adequately document her best value tradeoffs in the Source Selection Decision Document"). As Eleit alleges, had the Army conducted a proper technical evaluation, it may have been assigned a strength for its work reducing backlog, and LogiCore may have been assigned a weakness due to its reliance on experience that did not satisfy the recency requirement. The Court will not predict the results of a proper technical evaluation or whether

14

such an evaluation would justify selecting Eleit's higher priced quotation as the best value to the Army. However, considering the SSA's reliance on weaknesses as a discriminating factor and the lack of distinguishing features between Eleit's and LogiCore's quotations, there is a substantial chance that Eleit would have been awarded the BPA order but for the improper technical evaluation. *See DigiFlight I*, 165 Fed. Cl. at 609-10 (finding that if the agency had properly evaluated the quotations, which was not reflected by the record, plaintiff may have received strengths and other quoters may have received weaknesses that would have affected the best value analysis). Therefore, Eleit was prejudiced by the Army's errors. *See Femme Comp Inc.*, 83 Fed. Cl. at 770-71 (finding prejudice where "the court [] concluded that the Army improperly evaluated the proposals within the competitive range and that the [SSA]'s best value tradeoffs were significantly flawed").

### D.     Eleit is entitled to injunctive relief.

In its amended complaint, Eleit requested that the Court "[p]ermanently enjoin the Army from proceeding with performance on LogiCore's task order." [ECF 22] at 25-26. The Tucker Act empowers the Court to "award any relief that the court considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2). "To determine if a permanent injunction is warranted, the court must consider whether (1) the [protester] has succeeded on the merits, (2) the [protester] will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp. Inc. v. United States,* 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citing *PGBA, LLC,* 389 F.3d at 1228-29). Here, Eleit has succeeded on the merits of its protest, so the Court must determine whether Eleit will suffer irreparable harm in the absence of an injunction, whether the balance of hardships favors granting an injunction, and whether the public interest is served by an injunction. *See Contracting, Consulting, Eng'g LLC v. United States,* 104 Fed. Cl. 334, 353 (2012) ("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well." (citing *PGBA, LLC*, 389 F.3d at 1226, 1228-29)).

The Court finds that these factors weigh in favor of granting injunctive relief. First, Eleit will suffer irreparable harm without an injunction because there is no adequate alternative remedy for its lost opportunity to be fairly considered for the BPA order. *See Insight Sys. Corp. v. United States,* 110 Fed. Cl. 564, 582 (2013) ("When assessing irreparable injury, '[t]he relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction'" (alteration in original) (quoting *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993))); *Seventh Dimension, LLC v. United States*, 160 Fed. Cl. 1, 34 (2022) (citing cases) (explaining the well-established principle that, while not a *per se* rule, deprivation of an opportunity to fairly compete for contract award and the potential lost profits associated with such lost opportunity are often sufficient to constitute irreparable injury). Second, the balance of hardships weighs in Eleit's favor. Neither the government nor LogiCore allege how they will be harmed if Eleit is granted injunctive relief. *See* [ECF 26] at 36 (government's assessment of injunctive relief factors); [ECF 27] at 13 (LogiCore's assessment of the injunctive relief factors). Instead, the government concedes that, "if the Court were to rule against [it] on the merits, an injunction could be an appropriate remedy," and requests that "[t]he Court []

15

narrowly tailor any injunctive relief so that the Army is not required to conduct an entirely new procurement or take any steps that are unnecessary to address the Court's specific concerns." [ECF 26] at 36-37. On this basis, the Court concludes that the government and LogiCore will not be harmed beyond the costs and delays that typically result from the issuance of an injunction, which in this instance are insufficient to outweigh the harm experienced by Eleit. *See DigiFlight I,* 165 Fed. Cl. at 612 (presuming that the government will not be harmed where the government did not identify any harm); *22nd Century Techs., Inc. v. United States*, 176 Fed. Cl. 389, 402 (2025) ("[T]he harm to the [a]gency of having to reconsider a procurement in a fair and rational way does not outweigh the harm to an individual organization that was denied its right to fair consideration."); *Sys. Stud. & Simulation, Inc. v. United States,* 146 Fed. Cl. 186, 203 (2019) ("Only in an exceptional case would [delay] alone warrant a denial of injunctive relief, or the courts would never grant injunctive relief in bid protests." (second alteration in original) (quoting *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 715 (2006))). Finally, the public interest weighs in Eleit's favor because "the public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid." *PGBA, LLC v. United States,* 57 Fed. Cl. 655, 663 (2003) (citations omitted); *see also Sys. Dynamics Int'l, Inc. v. United States*, 167 Fed. Cl. 780, 797-98 (2023) ("[T]he public has a strong interest in being assured that the [a]gency has awarded the contract to an offeror [who] . . . meet[s] the minimum requirements specified in the [s]olicitation."). In sum, because all four factors weigh in Eleit's favor, Eleit is entitled to injunctive relief.

## IV.    CONCLUSION

For the foregoing reasons, Eleit's motion for judgment on the administrative record, [ECF 23], is **GRANTED**. The government's and LogiCore's respective cross-motions for judgment on the administrative record, [ECFs 26, 27], are **DENIED**. Eleit is entitled to injunctive relief. The Court **VACATES** the Army's award decision, **PERMANENTLY ENJOINS** the Army from proceeding with performance of the BPA order awarded to LogiCore pursuant to the RFQ, and **PERMANENTLY ENJOINS** the Army from awarding a BPA order pursuant to the RFQ until the Army conducts a new technical evaluation and best value trade-off determination consistent with this Opinion and Order. The Clerk of Court is **DIRECTED** to enter final judgment accordingly.

Some information contained in this Opinion and Order may be considered protected information subject to the Protective Order, [ECF 11], entered on May 22, 2025. Accordingly, the Opinion and Order is **FILED UNDER SEAL**. The parties **SHALL CONFER AND FILE on or before January 26, 2026**, a joint status report that: identifies information, if any, that the parties contend should be redacted; explains the basis for each proposed redaction; and includes an attachment of the proposed redactions for this Opinion and Order.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz<br>
THOMPSON M. DIETZ, Judge